# FIRST NATIONAL BANK OF RUSH CITY v. RUSH CITY STARCH COMPANY and Others.[1]

July 19, 1912.

Nos. 17,678—(214).

**Alteration of promissory note — evidence.**

> The evidence sustains the findings to the effect that there was no alteration of a promissory note after delivery to payee, so as to release the makers or guarantors.

Action in the district court for Chisago county to recover upon two promissory notes. The case was tried before Stolberg, J., who made

[1] Reported in 137 N. W. 179.

findings as set forth in the opinion and as conclusion of law ordered judgment in favor of plaintiff for $3,190 and interest. From an order denying their motions for a new trial, defendants Anderson, Johnson and Hansen appealed. Affirmed.

S. G. L. Roberts and Daniel Murphy, for appellants.

Alfred P. Stolberg, for respondent.

HOLT, J.

The action, brought on two promissory notes, of $2,700 each, was tried to the court and judgment ordered in plaintiff's favor for the amount unpaid. The appeal is from the order denying the answering defendants' motion for a new trial.

The defendant Rush City Starch Company is a corporation, and during all the time since March 11, 1907, the other four defendants were directors or officers thereof. On the date mentioned the corporation executed and delivered to plaintiff its promissory note for $800; the other defendants having guaranteed its payment. It was alleged in the complaint, and the court found, that thereafter more money was needed by the Starch Company, and other notes given therefor, and in renewal of the one first mentioned. On April 23, 1908, two notes were executed for the benefit of the company, due October 23, 1908, each for $2,700. One of these purported on its face to be the note of the defendant corporation. The other purported to be the note of "John Anderson, Pr's.," and C. M. Johnson. All four defendants guaranteed payment of both notes. It would seem from the evidence that so large a loan could not be made direct to the Starch Company because of the Federal banking regulations, therefore one note was executed so as to appear to be the individual note of the president and secretary of the company. These notes were not paid, but were renewed when due, October 23, 1908.

These renewal notes are the ones in suit. The one was executed by the corporation, and payment guaranteed by the other defendants. Liability on this note is not denied. The other note for $2,700 the defendants John Anderson, C. N. Hansen, and J. P. Johnson claim they are not liable on. The defendant corporation and C. M. Johnson are in default. It appears that this note in dispute was signed

by John Anderson and C. M. Johnson as makers, but through the signature C. M. Johnson three red ink lines are drawn. Then on the back thereof is imprinted with a rubber stamp the usual guaranty, waiver of notice, and consent to extensions. The blank therein for the insertion of "I" or "we" is not filled in, nor the date at the bottom, nor is there any signature on the line designated in the stamp as the proper place for a guarantor to sign; but a half inch below appear the signatures, one below the other in this order:

C. M. Johnson.

C. N. Hansen.

J. B. Johnson.

John Anderson answered separately, and alleged that he signed the note, believing it to be the sole note of the Starch Company, and that he, with the three other officers, were to incur liability only as guarantors. He further alleged that C. M. Johnson signed with him as joint maker; that after delivery the note was fraudulently altered by the name of C. M. Johnson, as maker, being canceled and indorsed as guarantor only. The defense of C. N. Hansen and J. B. Johnson is that after the making and delivery of the note "the said C. M. Johnson, one of the defendants herein, with the knowledge and consent of the plaintiff, and without the consent or knowledge of either of these defendants, materially altered said note, by striking off his signature as joint maker thereof with said John Anderson, and adding his signature thereto with said defendants J. P. Johnson and C. N. Hansen as one of the guarantors of said note."

John Anderson, who was president of the Starch Company, testified that he had signed so many notes that he did not remember very well the circumstances of signing the note in question. He, however, claimed that he understood he signed as president and as guarantor. When asked what influence was brought to bear on him by the officers or creditors of the Starch Company to induce him to sign, his answer was: "I remember it was an agreement between the directors to renew the note that was due then, and in that case we went in to sign. I signed, as I said before, as guarantor—go in equal with the rest of them when I signed the note." He further testified that there was no understanding that he and C. M. Johnson

should be responsible primarily for payment, but that all four should be equally held. It also appears that in the note of which this is a renewal, while Anderson signed as maker thereof, he added "Pr's." to his signature. No such addition was made to the note in suit, nor did he sign as guarantor. It is plain, upon defendant Anderson's own version of the transaction, he can have no defense. He does not claim that, when he signed, C. M. Johnson's name appeared on the face of the note. He does not claim that any officer of plaintiff misled him in the least, or requested him to sign the note, either as individual or as an officer of the Starch Company.

The court found, after setting out the note in extenso, with the signatures thereto as hereinbefore indicated: "That the signatures to said note were appended thereto by the said defendants in order and manner hereinbefore set forth, and that the signature of C. M. Johnson on the face of the note was struck out as herein indicated before he signed the said note on the back. That said defendants, John Anderson, C. M. Johnson, C. N. Hansen, and J. P. Johnson, at the time of signing said note intended to and did make, execute, and deliver said note to plaintiff as their joint and several note, guaranteeing the payment of the indebtedness then due and owing by said Rush City Starch Company to plaintiff, and as a renewal of note" hereinbefore described.

The errors assigned by the defendants Johnson and Hansen relate to the sufficiency of the evidence to sustain the findings. If the evidence supports the findings quoted, these two defendants cannot prevail on this appeal; for it is clear that the findings made negative the defense that there was a material alteration of the note after delivery thereof to plaintiff. Mr. C. M. Johnson was called as a witness, and gave as a reason why his signature was stricken out as maker, and indorsed on the note instead, that, after he signed on the face of the note, it came to his mind that as an individual borrower from the bank his name as maker on this $2,700 note would exceed the limit of the amount the bank could lawfully loan to one person; that thereupon the lines were drawn through his signature under John Anderson's name, and he signed his name on the back of the note, neither Hansen nor J. P. Johnson having

then signed. To the same effect was the testimony of the cashier of the plaintiff, except that it might be inferred that, although C. M. Johnson's signature was indorsed on the note before Hansen and J. P. Johnson indorsed theirs, the red ink lines were not drawn through C. M. Johnson's name as maker till after, but all was done prior to acceptance of the note. Of course, Hansen and J. P. Johnson testify that, when they indorsed their names, C. M. Johnson's name did not appear, except as maker; but neither could give any good reason why Anderson and C. M. Johnson should be primarily liable. J. P. Johnson states he was the first to indorse the note, yet his signature is below the other two. He claims the blank guaranty contract stamp was on there, yet his signature is not in the space there provided, but an inch and a half below.

We have carefully examined the record and come to the conclusion that the evidence amply sustains the findings of the court.

The order is affirmed.